MILTON (of color), Plaintiff in Error, v. McKARNEY, Defendant in Error.

1. An emancipation of slaves by will " on condition that they will enter under the care of the Colonization Society and emigrate to the American colony in Liberia" is a valid act of emancipation.
2. An emancipation of a slave under the twenty-third section of " a law respecting slaves," (R. C. 1825, p. 744,)—the emancipation being made conditional upon the choice of the slave to emigrate to Liberia—is valid although said law made no effectual provision to obtain security from the person emancipating, in accordance with the requirements of the fourth clause of the twenty-sixth section of the third article of the constitution.
3. Where a master attempts to set a slave free on condition of his emigrating to Liberia, the latter is not entitled to an immediate judgment of liberation upon his professing a willingness to comply with the terms of the will. It must appear not only that he wishes to emigrate to Liberia, but that means are provided for accomplishing that end. (SCOTT, Judge, dissenting.)

*Error to Monroe Circuit Court.*

The facts of this case sufficiently appear in the opinion of the court.

*Burckhartt,* for plaintiff in error.

I. The right of a slave to choose between freedom and slavery is recognized. (7 Dana, 30 ; 4 Leigh, 272 ; 19 Georg. 35 ; 10 Leigh, 602 ; 13 Gratt. 219 ; 1 Gill. & Jo. 390 ; 12 B. Monr. 557 ; 10 B. Monr. 69 ; 28 Mo. 254.) If a slave has no power to make an election where his freedom depends on that election, then the condition in the will is a condition subsequent. (7 G. & Jo. 227 ; 4 Kent, 130 ; 10 B. Monr. 397 ; 12 Gratt. 117.) It is only necessary for the slaves to offer to perform the condition, as it is impossible for them to perform the condition until they are free.

*Carr, Pindall & Howell,* for defendant in error.

I. The plaintiff has not the capacity to make the election. (Bailey v. Poindexter's Exec'r, 14 Gratt. 132.) The bequest therefore fails. There is no averment that the Colonization Society is willing to take the plaintiff under its care

and transport him to Liberia. This should be averred in the petition. The attempted emancipation took place under the twenty-third section of the chapter respecting slaves in revised code of 1825. (R. C. 1825, p. 744.) That act makes no provision for the giving of security as required by the constitution. The testator has provided no fund to transport the negroes or to serve as a security.

NAPTON, Judge, delivered the opinion of the court.

The question in this case depends on the construction of the following provision in the will of John McKarney, which was made in August, 1833 : " As to the residue of my slaves, to-wit, Marietta and her five children, Sam, Phebe, Nance, George, and her young child, with all her increase, I will and bequeath them to my beloved wife Margaret during her natural life, with a request that she attend strictly to their morals, and instruct them all to read the English language ; but I expressly prohibit the sale of them under any circumstances ; and after the death of the said Margaret, all of them that are twenty-one years of age are by me set free, on condition that they will enter under the care of the Colonization Society and emigrate to the American colony in Liberia, and as fast as they or their increase arrive at the said age of twenty-one years and comply with the above condition, I hereby set free. All of them that prefer remaining with any of my children, after the death of my said wife, to complying with the foregoing condition, are permitted to do so ; but I am to be distinctly understood, that they are not to be bought or sold even amongst my own children, much less to strangers."

The plaintiff is a son of Marietta, the woman named in the above provision, and is twenty-one years old. He alleges the death of the widow Margaret McKarney, and avers that by these provisions of the will of John McKarney he is free. He declares his willingness to comply with the conditions of said will and prays a judgment of liberation. To this petition there was a demurrer, and it was sustained.

Milton (of color) v. McKarney.

The principal question which this clause in the will presents is whether the conditional emancipation provided for is valid. It is insisted that an act of emancipation made dependent upon the choice of the slave is of no effect, because the exercise of such a power on the part of a slave is incompatible with the nature of slavery.

And such appears to have been the opinion of the court of appeals of Virginia in the case of Bailey and others v. Poindexter, 14 Gratt. 132. In the case of Elder v. Elder's Exec'r, 4 Leigh, 252, the decision was otherwise, and a provision of this character in a will was sustained and enforced. The case was one where the testator had, as in the present case, given to his slaves the choice of going to Liberia or remaining with his family as slaves. The chancellor appointed a commissioner to ascertain the wishes of the slaves, and under the direction of the court arrangements were made with the agent of the Colonization Society to have so many of the negroes as desired it transported to Liberia. There was no discussion in this case at the bar, so far as the report shows, of the question subsequently determined in Bailey and others v. Poindexter, nor does either one of the judges, who delivered opinions, allude to such an objection against the validity of the bequest; but the point was manifestly presented by the record, and the absence of any notice of it, both by the court and the counsel, would seem to authorize the inference that no doubts were entertained in relation to the legality of such a provision.

However this may be, we do not perceive any peculiarity in the condition of slavery, as it exists in this country, which prevents the master from emancipating his slaves upon condition that the slave is willing. It is the act of the master, and not of the slave, which effectuates the emancipation. If the master can emancipate upon condition at all, why may not the choice of the slave constitute that condition, as well as any other event or act with which the slave has no concern?

What policy is to be subserved by preventing the master

from consulting the wishes of his slaves in a matter of this kind, when the law gives him the power of unconditional emancipation ?  It may be said that the slave is not qualified to make a wise choice; but this fact only furnishes an argument against emancipation under any circumstances, and has no especial force against the kind of emancipation attempted here.  If the slave is incapable of exercising any will of his own, what additional capacity or fitness is bestowed on him by an absolute emancipation ?  Is he not in point of fact as well qualified the day before he is declared free as the day after he his manumitted ?  The legal incapacity of the slave to make a choice is a theory designed to recognize and enforce the legal dominion of the master, and it is a perversion of the theory to make it have the effect of diminishing the extent of that dominion.

Another point was made in this case—that the act of 1825, under which McKarney's will was made, is unconstitutional, as it made no effectual provision, in conformity to the 26th clause of the third article of the constitution of this state, to obtain security, from the person emancipating his slave, that the slave so emancipated should not become a public charge.  But it is obvious that this provision of the constitution can have no application to a case where a slave is only emancipated upon the condition of going to Africa, or elsewhere beyond the limits of this state.  In such cases a compliance with the conditions necessarily relieves the public here from all liability to the slave's future support.  The constitution was intended to prohibit emancipation, where the emancipated slaves are suffered to remain in this state, unless the person so emancipating will give the security required.

We have given our opinion upon these points, because they will necessarily arise in the case if it is further prosecuted, and not because they are essential to the determination of the case as it now stands.  We think the demurrer was properly sustained.  The will of McKarney did not effect an unconditional emancipation of the slaves specified.  They are,

Milton (of color) v. McKarney.

by its terms, " set free on condition that they will enter un-
der the care of the Colonization Society and emigrate to the
American colony of Liberia." They are allowed to choose
between going to Liberia and remaining slaves with the tes-
tator's children. If they prefer remaining in Missouri, they
are not liberated by the will, although the testator attempts
to impose restrictions upon their owners incompatible with
the laws. Such restrictions are merely nullities; they do
not have the effect of emancipating the slaves. It would be
contrary to the plain intent of the testator to give them such
a meaning. If he supposed or intended that the slaves, who
did not choose to go to Liberia, should be nevertheless free, it
was folly to place any restrictions concerning their sale out
of or in the family of the testator. His intention was that
they should remain slaves, but that they should not pass out
of his family by sale, or from one member of the family to
another. This latter intention can not be carried into effect,
because it is against the laws of the state.

The plaintiff was not entitled to a judgment of liberation
upon the case made in his petition. There is a general aver-
ment in the petition that the plaintiff is willing to comply
with the conditions of the will, but this is insufficient. If
such declarations as this be held a sufficient compliance with
a will of this character, emancipation under them will be in
effect unconditional, thereby defeating, instead of carrying
out, the intention of the testator. There are no doubt diffi-
culties attending the execution of such a bequest, at best;
but they are not insuperable. It is the duty of the executor
or administrator to see to the execution of the will. There
is no averment, in this case, that the administrator has shown
any disinclination to furnish reasonable facilities for execut-
ing the testator's purposes relative to these slaves. There is
no averment that the Colonization Society have the means or
the inclination to promote the purposes which the testator
had in view. There is no averment even that the Coloniza-
tion Society has any existence now, although, as a matter of
history, we believe the society still has an agent in this state.

This will was made more than twenty years ago, and the condition and prospect of that society may have undergone great changes. The court should be satisfied, not merely in reference to the plaintiff's wishes, but that means are provided for accomplishing them, if his choice is to emigrate to Liberia. In Elder v. Elder, a commissioner was appointed by court to ascertain the wishes of the slaves and to correspond and contract with the African Colonization Society for the transportation of such of them as were willing to accept emancipation upon these terms. There is nothing to forbid a similar course from being taken here, if the administration should interpose obstacles to carrying out in good faith the provisions of the will; but it is manifest that this action is misconstrued; there is no foundation for a judgment of immediate liberation.

Judgment affirmed; Judge Ewing concurring.

Scott, Judge, dissenting. I am of the opinion that this judgment should be reversed. This is an action standing on legal rights. In such cases, this court has no discretionary powers. The slave, under his master's will, has elected to be free, and to put himself under the direction of the Colonization Society, and, according to the will, has a right thereby to be free. This court has no authority by law, nor by virtue of any thing contained in the record, to look behind it, and inquire whether the slave will be sent to Africa or not.